**John C. GRYAR, Plaintiff,**

v.

**ODECO, INC., Defendant-Appellee,**

v.

**HUDSON MARINE, INC., Third-Party Defendant,**

**and**

**Highlands Insurance Company, Third-Party Defendant-Appellant.**

**No. 81–3409**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1983.

Johnson & McAlpine, Ronald A. Johnson, New Orleans, La., for plaintiff.

Thomas J. Grace, New Orleans, La., for defendant-appellee.

Before RUBIN, JOHNSON, and WILLIAMS Circuit Judges.

PER CURIAM:

The issues in this case were before this Court on a prior occasion but because of a procedural deficiency were not reached. The facts are adopted from this Court's opinion in the earlier appeal. *See Gryar v. Odeco Drilling, Inc.,* 674 F.2d 373 (5th Cir. 1982) (hereinafter *Gryar I* ).

John Gryar, a floorhand on a mobile drilling rig, was injured during a crew change while transferring from a crewboat to the rig on which he was employed. This lawsuit against his employer, Odeco, Inc. ("Odeco"), followed in the United States District Court for the Eastern District of Louisiana. Odeco filed third-party claims against Hudson Marine, Inc. ("Hudson Marine"), the owner of the crewboat that transported Gryar to the drilling rig, Highlands Insurance Company ("Highlands"), Hudson Marine's insurer, and Otto Candies, Inc. ("Otto Candies"), the owner of a workboat in the vicinity of the accident.

On the eve of trial, Gryar settled his claims for $300,000. In exchange for the dismissal of all claims against it, Otto Candies agreed to contribute $10,000 to the settlement fund. The remaining $290,000 was to be paid by Odeco and Hudson Marine based upon an appointment of fault made by the district judge after trial. Odeco's third-party claim against Hudson Marine's insurer, Highlands, for indemnification under a protection and indemnity policy issued to Hudson Marine also was put to trial.

At the conclusion of the trial the district judge announced her findings from

the bench. She found both Odeco and Hudson Marine negligent and apportioned fault equally between them. She further found that Hudson Marine was obligated to obtain coverage for Odeco as an additional insured, but had not done so. The action was then taken under advisement and the parties were requested to submit additional briefs discussing "why ODECO should or should not recover from Hudson." At a subsequent hearing, the district judge modified her earlier findings by ruling that Highlands' insurance policy had covered Odeco under its contract with Hudson Marine.

On June 17, 1981, a final judgment was entered. The judgment recited the terms of the settlement agreement, dismissed all claims against Otto Candies, repeated the court's earlier finding apportioning liability equally between Hudson Marine and Odeco, and awarded Gryar $145,000 against each. Lastly, the judgment included the district judge's finding that Odeco was a "covered additional assured" under Highlands' policy and directed judgment in favor of Odeco against Highlands for $145,000—Odeco's share of the settlement.

On July 7, 1981, Highlands filed a notice of appeal "appeal[ing] to the United States Court of Appeals for the Fifth Circuit from the judgment entered . . . on the 17th Day of June, 1981," We docketed Highlands' appeal 6 days later.

On July 21, 1981, the district judge filed written findings of fact and conclusions of law. These findings contradicted the judgment already entered by reasoning that while Odeco was an additional assured, Highlands was to indemnify Odeco solely as an "owner of [a] vessel," not as a rig operator. As Odeco "was found liable for its independent negligence committed as a rig owner rather than as a crewboat operator," Highlands was not obligated to Odeco. An amended judgment was entered the next day and Odeco took [the] appeal.

The parties subsequently agreed to a voluntary dismissal of the appeal from the June 17, 1981, judgment. That appeal was dismissed by the clerk. This Court found, however, that the district court did not have jurisdiction to enter the amended judgment on July 22, 1981, and ordered that opinion vacated. *Gryar I*, 674 F.2d at 376. After publication of the appellate opinion, Highlands Insurance Company (Highlands) sought and obtained a reinstatement of the appeal from the June 17, 1981, judgment. That judgment is the subject of the present appeal. The precise point on which the district court reversed itself in the now-vacated amended judgment is the crux of this appeal: whether Highlands must indemnify Odeco for its $145,000 share of the settlement.

### I. *Additional Assured*

The district court determined that Odeco was an additional assured under the protection and indemnity (P & I) insurance Hudson obtained for the M/V SCOTTIE B. In reaching this conclusion, the court relied on an amendment to the policy which provided:

Effective from inception, permission is granted to charter the vessel(s) insured herein to Otto Candies, Inc. and/or its affiliated or subsidiary companies and during the terms of such charter Otto Candies, Inc. and/or its affiliated or subusidiary [sic] companies, Exxon Company USA (A Division of Exxon Corporation), and/or anyone for whom the vessel(s) is working shall be named an additional assured hereunder and underwriters rights of subrogation against them waived.

Since the question presented for review involves the interpretation of the insurance contract, the Court is not constrained by the clearly erroneous standard.

Highlands argues that the court's conclusion that Odeco was an additional assured under the P & I policy is incorrect because Odeco was not specifically named in the insurance contract; because no contractual arrangement existed between Odeco and Hudson, Highlands, or Candies; because the vessel was not "working for" Odeco. First, the contractual web needs unraveling. Su-

perior owned the oil lease and contracted with Odeco to supply a mobile drilling rig and crew. Superior was to provide "all marine transportation services." Superior contracted with Otto Candies, Inc. to provide the crew boats to transport the Odeco employees. Candies, in turn, contracted with Hudson Marine for the crew boat from which the plaintiff was disembarking when he was injured. Hudson obtained its P & I insurance from Highlands. This policy listed several specific additional assureds, but did not include Odeco in the list.

The absence of any specific reference to Odeco or any contractual relationship between Hudson, Candies, or Highlands and Odeco is not determinative of whether Odeco is an additional assured if the "anyone for whom the vessel is working" language applies to persons not specifically listed. As the district court noted, the central question involves the interpretation of the "anyone for whom the vessel is working" language, *viz.*, whether the M/V SCOTTIE B was "working for" Odeco within the meaning of the policy. The court interpreted the phrase to apply to others not specifically named as additional assureds for whose benefit the vessel was performing services. The court found that the M/V SCOTTIE B was performing services for Odeco because the vessel was transporting Odeco employees to Odeco's drilling rig at the time of plaintiff's injury. The district court was correct in concluding that Odeco, although not specifically listed, was an additional assured within the policy language. The tenuous distinction advanced by Highlands—that the M/V SCOTTIE B was "working with" Odeco, not "working for" Odeco—is not supported by the case Highlands cites, *Great American Insurance Co. v. Gulf Marine Drilling No. 1*, 302 F.2d 332 (5th Cir.1962). The contractual scheme contained in the record supports the district court's conclusion that Odeco was an additional assured.

## II. *Extent of Coverage*

In its findings of fact, the district court found that Odeco was negligent for requiring its crew members to make a vessel-to-vessel transfer under the conditions at the

drilling rig and for failing to instruct its crew on how to safely make such transfers. She found the owner of the SCOTTIE B negligent for failing to hold the vessel steady, to properly moor her to the workboat, and to prevent the crew from transferring before securing the crew boat to the work boat. She found both Odeco and Hudson equally at fault.

Highlands argues that even if Odeco is an additional assured, the P & I insurance for the M/V SCOTTIE B does not cover Odeco's negligence because its negligence was in its capacity as owner of the drilling rig and as Gryar's employer, not as owner of the crew boat, the insured vessel. This issue is the one on which the district judge reversed herself in the now-vacated amended judgment—she had first ruled that Odeco was the covered additional assured; then she ruled that Odeco was not covered by the policy because its negligence was not committed in the capacity of an owner of the crew boat. It was the latter judgment which was vacated.

Odeco contends that coverage by P & I insurance has only been denied where the insured vessels were exonerated from liability [*citing Lanasse v. Travelers Insurance Co.*, 450 F.2d 580 (5th Cir.1971), *cert. denied*, 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972)] or where the injury occurred on another vessel [*citing Wedlock v. Gulf Mississippi Marine Corp.*, 554 F.2d 240 (5th Cir.1977)]. Odeco claims that where the negligence of both the insured vessel and the additional assured combined to cause the injury, the additional assured was covered by the vessel's P & I insurance [*citing Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 462 F.Supp. 485 (E.D. La.1978), *aff'd*, 639 F.2d 1168 (1981)]. The cases Odeco cites do not support its broad assertions. This Court has recognized the constrictive effect of the language "as owner" in P & I policies. *Continental Oil Co. v. Bonanza Corp.*, 706 F.2d 1365 at 1371 & 1374 (5 Cir.1983) (*en banc*). In *Lanasse*, 450 F.2d at 584, this Court held that there must be "some causal operational relation between the vessel and the resulting injury" in order to bring the liability within the insurance policy on the covered vessel. In

*Lanasse,* the vessel and her crew were absolved from all wrong—the vessel was merely the inert locale of the injury. This Court emphasized that Chevron could not recover from the insurer of the tug because it was Chevron's actions as a platform or crane operator that caused the harm, not its actions as a ship owner. *Id.*

In *Wedlock,* the barge owner, McDermott, chartered a tug and its crew to tow the barge. A deckhand employed by the tug owner DeFelice Marine was blinded by a spotlight beam from the vessel and fell through an open hatch on the barge of the additional assured, McDermott. This Court found both DeFelice and McDermott equally and actively negligent, DeFelice for negligently shining a spotlight in the deckhand's eyes, and McDermott for delivering a barge with an open hatch cover. Both of these negligent acts constituted proximate causes of the injury. This Court held that the tug owner's P & I insurance did not cover the charterer's (McDermott's) liability because that liability arose from its negligent acts with respect to its own vessel, the barge. Explaining *Lanasse,* the Court in *Wedlock* stated that the existence of "some causal operational relation" between the covered vessel (the tug) and the accident brings the liability within the insurance policy on the covered vessel but does not address the extent of the coverage. In *Wedlock,* the Court held that the tug owner's P & I policy covered McDermott's liability arising from operation of the tug (the covered vessel) to the same extent the policy covered DeFelice but that the policy did not cover McDermott's liability for acts of negligence "committed *qua* barge-owner, rather than *qua* charterer." *Wedlock,* 554 F.2d at 242.

■ The instant case is indistinguishable from *Wedlock.*[1] Two separate, independent acts of negligence constituted proximate causes of Gryar's injuries. Because Odeco's

liability was predicated upon its acts as owner of the drilling rig and as Gryar's employer and not on any acts as owner of the vessel, Odeco is not covered by the vessel's P & I insurance, which is limited to owners of the vessel. Odeco cannot escape the holding of this Court in *Wedlock* through reliance on *Offshore Logistics,* which held that the additional assured, Southern, acted as a vessel "owner" within the meaning of the P & I policy. In *Offshore,* the negligence of both the insured vessel and the additional insured combined to cause the injury, but the court's holding was based on a finding that Southern's negligent acts were committed as owner *pro hac vice.*[2]

Odeco's liability in the instant case arose from its negligence as an owner of the rig and as an employer. Highlands' P & I policy did not provide coverage for this negligence. The judgment of the district court for Odeco is reversed.

REVERSED.

---

1. Odeco's attempt to distinguish *Wedlock* on the basis that the injury there occurred on the barge rather than the insured vessel whereas Gryar's injury occurred as he was transferring from the insured vessel to the workboat is unpersuasive. The Court in *Wedlock* did not rely on this fact in reaching its decision.

2. Southern was found to be a demise charterer which is considered the owner of the vessel *pro hac vice.* (In a demise or bareboat charter, control of the vessel is surrendered to the charterer.)